IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CLASS ACTION |
| FIRST SOUTH BANCORP, INC., FREDERICK N. HOLSCHER, MARSHALL T. SINGLETON, LINDSEY A. CRISP, BRUCE W. ELDER, STEVE L. GRIFFIN, L. STEVEN LEE, and CAROLINA FINANCIAL CORPORATION, | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on June 12, 2017 (the "Proposed Transaction"), pursuant to which First South Bancorp, Inc. ("First South" or the "Company") will merge with and into Carolina Financial Corporation ("Carolina Financial").

2. On June 9, 2017, First South's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Carolina Financial. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by First South's and Carolina Financial's stockholders, stockholders of First South will receive 0.52 shares of Carolina Financial common stock for each share of First South common stock they own. Based on the closing sale price of Carolina Financial

common stock on June 9, 2017, the last trading day before public announcement of the Proposed Transaction, the 0.52 exchange ratio represented approximately $16.89 in value for each share of First South common stock.

3. The special meeting of First South's stockholders will be held on October 26, 2017, where they will be asked to approve the Proposed Transaction.

4. On September 6, 2017, defendants filed a Definitive Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of First South common stock.

10. Defendant First South is a Virginia corporation and maintains its principal executive offices at 1311 Carolina Ave, Washington, North Carolina 27889. The Company is the financial holding company for First South Bank. First South's common stock is traded on the NASDAQGS under the ticker symbol "FSBK."

11. Defendant Frederick N. Holscher ("Holscher") is Chairman of the Board of First South.

12. Defendant Marshall T. Singleton ("Singleton") is Vice Chairman of the Board of First South.

13. Defendant Lindsey A. Crisp ("Crisp") is a director of First South.

14. Defendant Bruce W. Elder ("Elder") is a director, President, and Chief Executive Officer ("CEO") of First South.

15. Defendant Steve L. Griffin ("Griffin") is a director of First South.

16. Defendant L. Steven Lee ("Lee") is a director of First South.

17. The defendants identified in paragraphs 11 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Carolina Financial is a Delaware corporation with its principal executive offices located at 288 Meeting Street, Charleston, South Carolina 29401. Carolina Financial is the financial holding company for CresCom Bank, a South Carolina state-chartered commercial bank with 34 branches located throughout the Carolinas, in addition to a loan production office in Greenville, South Carolina.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of First South (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of June 9, 2017, there were approximately 9,501,016 shares of First South common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

26. First South is a financial holding company under the Bank Holding Company Act of 1956. The Company was originally incorporated as a Delaware corporation in 1996. In 1999, the Company changed its state of incorporation from Delaware to Virginia. First South's primary business is to own and control all of the capital stock of First South Bank, a North Carolina chartered commercial bank.

27. First South Bank opened for business in 1902, and it currently has 28 full-service branch offices throughout eastern and central North Carolina. First South Bank received Federal Deposit Insurance Corporation ("FDIC") insurance of its deposits in 1959. Its principal business consists of attracting deposits from the general public and investing these funds in commercial real estate loans, commercial and industrial business loans, equipment leases, consumer loans and loans secured by first and second mortgages on owner-occupied, single-family residences in the Bank's market area.

28. First South Bank's income consists of interest and fees earned on loans and investments, loan servicing and other fees, gains on the sale of loans and investments, and service charges and fees collected on deposit accounts. Its expenses consist of interest expense on deposits and borrowings and non-interest expense such as compensation and employee benefits, occupancy expenses, FDIC insurance, and other miscellaneous expenses. Funds for these activities are provided by deposits, borrowings, repayments of outstanding loans and investments and other operating revenues.

29. On June 9, 2017, the Board caused First South to enter into the Merger Agreement, pursuant to which the Company will be acquired by Carolina Financial.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

30. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

32. First, the Proxy Statement omits material information regarding First South's financial projections, Carolina Financial's financial projections, and the financial analyses performed by First South's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), and Carolina Financial's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW").

33. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34. Although the Proxy Statement disclose certain of First South's financial projections for fiscal years 2017 through 2020, the Proxy Statement fails to disclose the projections through fiscal year 2022 that were relied upon by Raymond James in its Discounted Cash Flow Analysis. Indeed, the Proxy Statement states that "Raymond James analyzed the discounted present value of First South's projected free cash flows for the years ending December 31, 2017 through December 31, 2022 on a stand-alone basis," and that "Raymond James used calendar year 2022 as the final year for the analysis and applied multiples, ranging from 12.0x to 18.0x, to calendar year 2022

6

adjusted net income in order to derive a range of terminal values for First South in 2022." The Proxy Statement therefore must disclose these critical terminal year projections through 2022 that were used by Raymond James in its analyses.

35. The Proxy Statement, moreover, completely fails to, but must, disclose Carolina Financial's financial projections. First South stockholders are entitled to the acquiring company's projections because they are being asked to approve the Proposed Transaction and, as a result, become Carolina Financial stockholders by virtue of receiving the all-stock merger consideration.

36. With respect to Raymond James' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) First South's "projected free cash flows" through year 2022, as well as the constituent free cash flow line items; (ii) whether Raymond James accounted for any cost savings or synergies as a result of the Proposed Transaction in its analysis; (iii) the inputs and assumptions underlying the discount rate range of 11.4% to 13.4%; and (iv) the perpetuity growth rates that are implied by Raymond James' analysis.

37. With respect to Raymond James' Selected Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by Raymond James in its analysis.

38. With respect to Raymond James' Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by Raymond James in its analysis.

39. With respect to KBW's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the financial projections of First South for years 2018 through 2023 that KBW used in its analysis; (ii) the inputs and assumptions underlying the discount rate range of 9% to 13%; and (iii) the perpetuity growth rates that are implied by KBW's analysis.

40. With respect to KBW's Selected Companies Analyses of Carolina Financial and First South, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the companies observed by KBW in its analyses.

41. With respect to KBW's Selected Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by KBW in its analysis.

42. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Opinion of First South's Financial Advisor;" (ii) "Opinion of Carolina Financial's Financial Advisor;" and (iii) "Certain Carolina Financial and First South Unaudited Prospective Financial Information."

43. Second, the Proxy Statement omits material information relating to the background of the Proposed Transaction.

44. The Proxy Statement indicates that the Company entered into at least three confidentiality agreements with Bank A, Bank C, and Bank D, which were interested in potentially acquiring the Company. Although the Proxy Statement provides stockholders with a description of those parties' confidentiality agreements, the Proxy Statement fails to disclose whether First South entered into confidentiality agreements with Carolina Financial and Bank B, and if so, whether the confidentiality agreement with Bank B contained a standstill and/or "don't ask, don't waive" provision that is preventing Bank B from submitting a topping bid to acquire the Company or requesting a waiver of standstill provision. This information is particularly important to stockholders in light of the fact that the Board decided to proceed with a transaction with Carolina Financial, despite the fact that Bank B offered a higher implied merger consideration. Specifically, on June 5, 2017, Bank B submitted a letter to First South that stated Bank B was prepared to make

8
Case 4:17-cv-00124-BO   Document 1   Filed 09/07/17   Page 8 of 14

an offer to acquire First South at a price of $17.00 per share to be paid either in all cash or in the form of a combination of cash and Bank B preferred stock, while the merger consideration implied from Carolina Financial's final all-stock proposal was only $16.89 per share on June 9, the day the Board approved the Proposed Transaction. Thus, without this information, the Company's stockholders could be misled into believing that Bank B is currently free to make a superior offer to acquire the Company.

45. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

46. Third, the Proxy Statement fails to disclose material information relating to potential conflicts of interest of Raymond James and KBW. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. The Proxy Statement states that, "[d]uring the two years preceding the date of Raymond James' written opinion, Raymond James has been engaged by or otherwise performed services for First South for which it was paid a fee (separately from any amounts that were paid to Raymond James under the engagement letter described in this joint proxy statement/prospectus pursuant to which Raymond James was retained as a financial advisor to First South to assist in reviewing strategic alternatives)." The Proxy Statement, however, fails to disclose the nature and timing of Raymond James' past services, as well as the compensation that Raymond James earned from First South or its affiliates in connection with those services.

48. Similarly, the Proxy Statement indicates that KBW has provided certain services to Carolina Financial in the past two years, but the Proxy Statement fails to disclose the amount of compensation that KBW has earned from Carolina Financial or its affiliates in connection with

9

those services.

49.   The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Opinion of First South's Financial Advisor;" (ii) "Opinion of Carolina Financial's Financial Advisor;" and (iii) "Background of the Merger."

50.   Fourth, the Proxy Statement fails to disclose material information relating to potential conflicts of interest of the Company's executive officers.

51.   Specifically, the Proxy Statement indicates that, following the completion of the Proposed Transaction, First South's President and CEO, Elder, will join CresCom's board of directors and will serve as CresCom Bank's President of North Carolina Banking, and First South's Senior Vice President and Area Executive, Cornelius F. Sullivan, will become CresCom Bank's Senior Vice President and Raleigh Area Executive. Although the Proxy Statement indicates that First South's legal counsel was first presented with proposed post-merger employment agreements for each of these officers on May 25, 2017, the Proxy Statement fails to disclose when Carolina Financial first indicated to these officers or other First South representatives that Carolina Financial was interested in retaining them, as well as the substance of those conversations.

52.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

53.   The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background

10

of the Merger;" and (ii) "Interests of Executive Officers, Employees, and Directors of First South in the Merger."

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to First South's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and First South**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. First South is liable as the issuer of these statements.

57. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

58. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Carolina Financial

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants and Carolina Financial acted as controlling persons of First South within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of First South and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65. Each of the Individual Defendants and Carolina Financial was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

67. Carolina Financial also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

68. By virtue of the foregoing, the Individual Defendants and Carolina Financial violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants and Carolina Financial had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

13

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 7, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel.: (302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Tel.: (484) 324-6800

WARD BLACK LAW

By: /s/Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
208 West Wendover Avenue
Greensboro, NC 27401
Tel.: (336) 510-2014
Fax: (336) 510-2181
jwblack@wardblacklaw.com

*Attorneys for Plaintiff*